# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JOHN KEITH CALVIN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. |
| STATE OF KANSAS, DEPARTMENT OF CORRECTIONS; | ) ) ) ) |
| AND | ) ) |
| TOMMY WILLIAMS, WARDEN, EL DORADO CORRECTIONAL FACILITY | ) ) ) |
| Defendants. | ) |

## COMPLAINT SEEKING EMERGENCY INJUNCTIVE RELIEF FOR VIOLATIONS OF FIRST, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS AND TO FURTHER PERPETUATE TESTIMONY

Plaintiff John Keith Calvin, by and through his undersigned counsel, and for his Complaint Seeking Emergency Injunctive Relief for Violations of the First, Sixth, Eighth, and Fourteenth Amendments states and alleges as follows:

## PRELIMINARY STATEMENT

1. Mr. Calvin, who has diagnosed Stage IV colon cancer and is not being appropriately cared for in prison (having lost **over 70 pounds from starvation during the last 90 days**) continues to be starved to death by the State of Kansas.

2. Mr. Calvin,[1] housed by the State of Kansas, Department of Corrections ("KDOC") at El Dorado Correctional Facility, is dying from Stage 4 colon cancer that has metastasized into other organs, including at least his kidneys and bladder, and likely his liver.

---

[1] Mr. Calvin (KDOC# 0077541), who is eligible for parole in May 2023, has been incarcerated by the KDOC since 2003, when he was found guilty of felony murder in the murder of John Coats. But Mr. Calvin is innocent. Coates' admitted actual murderer – Melvin Lee White, Jr. – has repeatedly, both under oath and publicly, stated that Mr.

1

3.      In late November, Mr. Calvin was transported to Wesley Medical Center ("Wesley") in Wichita, Kansas because of continuing severe abdominal pain, blood in his urine and stool, and no bladder control. Concurrent with his transfer, the KDOC refused to disclose Mr. Calvin's location to his attorneys or family and delayed their communications and phone calls with him.

4.      Upon transfer to Wesley, nephrostomy tubes were immediately inserted into Mr. Calvin's kidneys in order to drain blocked urine.

5.      On December 13, 2022, Wesley sedated Mr. Calvin for the purpose of performing colonic diversion surgery that would attach a colostomy bag. However, upon opening Mr. Calvin's lower abdomen and visually inspecting him, the surgeons discovered his abdominal cavity was too full of cancer to successfully operate. The surgeons sewed Mr. Calvin back up without further treatment.

6.      Since September 2022, Mr. Calvin has lost over 70 pounds, was described by Wesley as "chronically ill appearing," and was diagnosed by Wesley as having "Severe Protein Calorie Malnutrition."[2]

---

Calvin is innocent and had nothing to do with, and no prior knowledge of, White's murder of Coats. White, as a result of a plea deal, received a 5-year concurrent sentence for pulling the trigger. Meanwhile, Mr. Calvin, who was framed by KCK police, received a sentence of life in prison. Mr. Calvin is yet another victim of the now infamous corruption of KCK police as exemplified by former Kansas City, Kansas Detective Roger Golubski, who is currently under indictment in this District in *USA v. Golubski*, Case No. 22-CR-40055-TC, and *USA v. Brooks*, *et al*, Case No. 22-CR-40086. Mr. Calvin's innocence case has been referred to the Wyandotte Conviction Integrity Unit for investigation.

[2] An action was filed in the District Court for Johnson County, Kansas, seeking an order to depose Mr. Calvin pre-suit to preserve his testimony pursuant to K.S.A. 60-227. Over the objection of the State of Kansas, the Order was granted, and Mr. Calvin's video deposition was taken on December 22, 2022. That video shows his precarious health condition and demonstrates the inability, or unwillingness, of the State to provide "suitable or appropriate" care in "his current facility." The video of the deposition, Exhibit A, will be provided if the Court grants the concurrently filed Motion for Leave to File Exhibit Conventionally pursuant to Administrative Procedure for the District of Kansas, § IV.C.

7. Having evaluated Mr. Calvin, Wesley opined that Mr. Calvin was: "Overall, poor prognosis, will likely be reliant on multiple tubes once discharged and will need close cares that may not be suitable or appropriate for him to return to his current facility."

8. Wesley was correct. Since Mr. Calvin was returned to the infirmary in El Dorado, KDOC has failed to provide him with adequate nutrition or pain relief. The KDOC allows Mr. Calvin morphine every 4 hours – which, Mr. Calvin testified, provides anywhere from 5 to 15 <u>minutes</u> of relief.  Even worse, despite Mr. Calvin's bowel cancer preventing him from eating or digesting food, the KDOC refuses to provide intravenous nutrition through a TPN line.[3]

9. On December 22, 2022, Mr. Calvin was deposed via video deposition pursuant to K.S.A. 60-227 for perpetuation of his testimony. Despite repeated requests, the KDOC refused to produce Mr. Calvin's Wesley medical records from November and December 2022 prior to his deposition. In fact, the KDOC did not produce these records to Mr. Calvin's counsel until December 27, 2022. As a direct result of the KDOC's own conduct, Mr. Calvin's counsel require an additional deposition of Mr. Calvin regarding these records and his treatment before he dies.

10. In the late afternoon of December 23, 2022, the KDOC called Mr. Calvin's family and told them that Mr. Calvin had again been transported to a hospital; this time because his nephrostomy tubes had detached and urine was draining into his body. KDOC, nonetheless, refused throughout his five-day rehospitalization to tell Mr. Calvin's attorneys-in-fact *or* attorneys-in-law his location. The KDOC did, however, tell Mr. Calvin's family that Mr. Calvin was *not* transported to Wesley.

---

[3] Since deposing Mr. Calvin on December 20, 2022, Counsel for Plaintiffs have requested and demanded that KDOC utilize existing lines into Mr. Calvin to insert a TPN and provide Mr. Calvin with needed nourishment. KDOC has refused. "TPN" is: "Total parenteral nutrition (TPN) is **a method of feeding that bypasses the gastrointestinal tract**. A special formula given through a vein provides most of the nutrients the body needs. The method is used when someone can't or shouldn't receive feedings or fluids by mouth." MedlinePlus Medical Encyclopedia.

11. To date, the KDOC has severely and improperly limited Mr. Calvin's attorneys from speaking with him. During his hospitalizations the KDOC has prevented Mr. Calvin's family and attorneys from knowing Mr. Calvin's location or having access to him to assess his condition.

12. This is an action for emergency injunctive relief, to compel Defendants to provide Mr. Calvin with access to his family and attorneys as required by the First, Sixth, and Fourteenth Amendments and to provide Mr. Calvin with the nutrition and palliative care required by the Eighth and Fourteenth Amendments, and to further preserve Mr. Calvin's testimony in light of his recently produced medical records and his five-day rehospitalization.

## PARTIES

13. Mr. Calvin is an inmate, currently in the custody of the KDOC, who resides in El Dorado, Kansas.

14. Defendant State of Kansas, Department of Corrections is authorized to sue or be sued in its own name and is served through the Kansas Attorney General, K.S.A. 60-304(d)(5), located at 120 SW 10th Avenue, 2nd Floor, Topeka, Kansas 66612 with a courtesy copy to the KDOC's counsel of record, Natasha Carter, General Counsel, 714 SW Jackson, Suite 300, Topeka, Kanas 66603.

15. Defendant Tommy Williams, Warden, El Dorado Correctional Facility is the warden of the El Dorado Correctional Facility and currently has custody of Mr. Calvin. Mr. Williams is sued in his official capacity as Warden of the KDOC El Dorado facility and is served through the Kansas Attorney General, K.S.A. 60-304(d)(5), located at 120 SW 10th Avenue, 2nd Floor, Topeka, Kansas 66612 with a courtesy copy to the KDOC's counsel of record, Natasha Carter, General Counsel, 714 SW Jackson, Suite 300, Topeka, Kanas 66603.

**JURISDICTION AND VENUE**

16. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3) because Plaintiff presents federal claims arising under the First, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

17. Venue is proper under 28 U.S.C. § 1391(b)(1) because all Defendants are residents of Kansas; and 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in the District of Kansas.

**COUNT I – DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS
IN VIOLATION OF THE EIGHTH AND FOURTEENTH AMENDMENTS
(REQUEST FOR EMERGENCY INJUNCTIVE RELIEF)**

18. The above paragraphs are realleged and incorporated by reference as though fully set forth herein.

19. Mr. Calvin is suffering from terminal, stage 4 cancer, the symptoms of which have caused him significant pain for over three months. His symptoms continue to worsen, and he is without adequate pain control or nourishment. Physically, Mr. Calvin has grown extremely frail and needs assistance with nearly all activities of daily living.

20. The KDOC is aware and has been repeatedly alerted to Mr. Calvin's serious and exigent medical needs, including, but not limited to, Mr. Calvin's verbal and written requests for treatment and care, requests made by his attorneys, and notes from Mr. Calvin's medical providers, including Wesley.

21. While acting under color of state law, the KDOC has acted, and continues to act, with deliberate indifference to Mr. Calvin's serious documented medical needs arising from his metastasized colorectal cancer, including Mr. Calvin's visually and audibly obvious needs for appropriate and effective pain management and nutrition.

22. As a direct result of the KDOC's deliberate indifference, Mr. Calvin has suffered and continues to suffer from (i) undermedication of the painful symptoms of his stage 4 cancer and (ii) malnourishment, as he painfully starves to death while under KDOC's care.

23. The KDOC's acts and omissions have been, and continue to be, intentional, willful, wanton, reckless, and malicious, and demonstrate complete and deliberate indifference to and a conscious and reckless disregard for Mr. Calvin's rights.

24. Mr. Calvin is entitled to emergency, preliminary injunctive relief requiring the KDOC to transfer Mr. Calvin to a medical and/or hospice facility, ideally in the Kansas City area, capable of managing his pain and providing adequate intravenous nutrition.

25. Mr. Calvin has a substantial likelihood of success on the merits of this claim, in that the evidence shows the KDOC – even after multiple requests and complaints by Mr. Calvin, his family, and his attorneys – and recommendations from his physicians, refuses to provide adequate pain management or life sustaining nutrition, in violation of his Eighth Amendment rights.

26. Mr. Calvin will suffer irreparable injury if the Court denies this request for a preliminary injunction because he will continue to suffer from severe pain that could otherwise be alleviated through adequate pain management, and he will continue to starve due to withheld nutrition and can be expected to quickly die from malnourishment.

27. Mr. Calvin's injury outweighs any potential injury to the KDOC, in that it is apparent from the December 22, 2022, video that security concerns as to Mr. Calvin's custody are minimal and could be addressed by the attendance of a single deputy, or even no deputy at all.[4]

---

[4] Apart from Mr. Calvin's obvious frailty, KDOC cannot have any colorable claim that it fears Mr. Calvin will be dangerous in hospice care, as Mr. Calvin's 20 years of incarceration have demonstrated that he is a model prisoner. Mr. Calvin, who is less than 5 months from eligibility for probation, was transferred to El Dorado to enable him to continue to manage the work of approximately 30 fellow prisoners in a embroidery and screen printing manufacturing facility located within the El Dorado prison.

28. The preliminary injunction is not adverse to the public interest, but rather furthers the public interest, because Mr. Calvin presents no safety concern as he dies from cancer, and because the public has a cognizable and important public interest in preventing the cruel starvation of its citizens.

## COUNT II – FAILURE TO PROVIDE ACCESS TO THE COURTS
## IN VIOLATION OF THE FIRST, SIXTH, AND FOURTEENTH AMENDMENTS
## (REQUEST FOR EMERGENCY INJUNCTIVE RELIEF)

29. The above paragraphs are realleged and incorporated by reference as though fully set forth herein.

30. The KDOC has prevented Mr. Calvin from communicating with the outside world, in violation of the First Amendment,[5] by actively concealing his location from his family and his counsel and preventing phone calls to him.

31. As a result, Mr. Calvin has been cut off from both his attorneys-in-fact and his attorneys-at-law. This is actively interfering with his access to the courts and freedom to petition the government for a redress of grievances, in violation of the First Amendment,[6] because Mr. Calvin, with the very, *very* little time he has left, desires to work toward and prepare all necessary engagements and documents to obtain his exoneration and investigate and prepare his Section 1983 claims.

32. The KDOC's active hiding of Mr. Calvin, and the KDOC's refusal to allow his attorneys to speak with him, is interfering with their efforts to adequately and effectively advocate on his behalf. Once Mr. Calvin dies, what he knows, and the directions he desires to communicate to his attorneys, will be lost forever. This is a concrete prejudice to pending litigation. As further evidence of the State's interference with Mr. Calvin's constitutional rights, counsel cannot obtain

---

[5] *E.g.*, *Thornburgh v. Abbott*, 490 U.S. 401, 411-12, 109 S. Ct. 1874, 104 L. Ed. 2d 459 (1989).
[6] *E.g.*, *Johnson v. Avery*, 393 U.S. 483, 485, 89 S. Ct. 747, 21 L. Ed. 2d 718 (1969).

a Verified Petition pursuant to FRCP R. 27(a)(1), counsel does not have regular and confidential access to their client and during his rehospitalization did not even know his location.

33.    Mr. Calvin is entitled to emergency, preliminary injunctive relief requiring the KDOC to immediately disclose his location to his attorneys during any transportation from the El Dorado prison and arrange for regular confidential phone calls and visits with him, and to make Mr. Calvin available for deposition to further preserve his testimony.

34.    Mr. Calvin has a substantial likelihood of success on the merits of this claim, in that the evidence shows the KDOC – even after multiple requests – refuses to provide Mr. Calvin's location when hospitalized or allow his attorneys to speak or visit with him, in violation of his First and Sixth Amendment rights. Mr. Calvin was hospitalized for 28 of the last 60 days. During that time, Mr. Calvin's access to his lawyers was limited to a couple brief phone calls. The KDOC did not permit any confidential communications.

35.    Mr. Calvin will suffer irreparable injury if the Court denies this request for a preliminary injunction because Mr. Calvin will soon die – with his death hastened by the KDOC's malnourishment and inadequate pain management – and the information, directions, and aims contained within his head, which attorneys for Mr. Calvin cannot know without sufficient counsel with him, will die with Mr. Calvin. This injury outweighs any potential injury to the KDOC.

36.    The preliminary injunction is not adverse to the public interest, but rather furthers the public interest, because Mr. Calvin seeks the counsel of his attorneys – a constitutional right that the public desires to see furthered.

WHEREFORE, Mr. Calvin respectfully requests that this Court issue injunctive relief, ordering the KDOC to:

(i)    provide Mr. Calvin with immediate intravenous nourishment;

(ii)  transfer Mr. Calvin's care and treatment to a hospital or hospice facility capable of handling his needs for nutrition and pain management;

(iii)  immediately and until his death, notify Mr. Calvin's attorneys-in-fact and attorneys-at-law of Mr. Calvin's location and immediately upon any change in said location;

(iv)  make Mr. Calvin available for an immediate deposition to preserve his testimony;

(v)  for Mr. Calvin's costs, expenses, and attorneys' fees incurred herein; and

(vi)  for such other relief as the Court deems just and proper.

December 30, 2022.                                        Respectfully submitted,

/s/ Stephen R. McAllister
Stephen R. McAllister     KS Bar #15845
Dentons
4520 Main Street, Suite 1100
Kansas City, Missouri 64111
Telephone:   (816) 460-2400
Facsimile:    (816) 531-7545
Stephen.McAllister@dentons.com

AND

/s/ William J Skepnek
William J. Skepnek     KS Bar #10149
THE SKEPNEK LAW FIRM, PA
1 Westwood Rd.
Lawrence, KS 66044
Phone: 785-856-3100
Fax: 785-856-3099
bskepnek@skepneklaw.com

AND

/s/ Cheryl A. Pilate
Cheryl A. Pilate     KS Bar #14601
Morgan Pilate, LLC
926 Cherry Street

Kansas City, Missouri 64106
Telephone:   (816) 471-6694
Facsimile:   (816) 472-3516
cpilate@morganpilate.com

AND

/s/ Quentin M. Templeton
Quentin M. Templeton      KS Bar #26666
FORBES LAW GROUP, LLC
6900 College Boulevard, Ste. 840
Overland Park, Kansas 66210
Telephone:   (913) 341-8600
Facsimile:   (913) 341-8606
qtempleton@forbeslawgroup.com

AND

/s/ Brennan P. Fagan
Brennan P. Fagan      KS Bar #20430
Fagan & Emert, LLC
730 New Hampshire Street, Suite 210
Lawrence, Kansas 66044
Telephone:   (785) 331-0300
Facsimile:   (785) 331-0303
bfagan@faganemert.com

ATTORNEYS FOR MR. CALVIN

**CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of December, 2022, I served the foregoing on the following via electronic mail and Certified U.S. Mail, return receipt requested:

Office of Attorney General
Shon Qualseth
120 SW 10th Avenue, Room 200
Topeka, Kansas 66612
Shon.Qualseth@ag.ks.gov

and


Kansas Department of Corrections
Natasha Carter, General Counsel
714 SW Jackson, Suite 300
Topeka, Kansas 66603
Natasha.Carter@ks.gov

                                         */s/ Quentin M. Templeton*
                                         Quentin M. Templeton