**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| JOHN KEITH CALVIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 22-3317-JWL-JPO |
| | ) | |
| STATE OF KANSAS, et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**STATE OF KANSAS'S RESPONSE TO PLAINTIFF'S**
**MEMORANDUM IN SUPPORT OF COMPLAINT**

The State of Kansas remains in opposition to plaintiff's request for emergency injunctive relief. The State incorporates by reference the facts and legal arguments set forth in the State's Response to the Complaint, Doc. No. 13.

First, there is no evidence that defendant Tommy Williams or any other specific person actually knew of and disregarded a substantial risk of harm to plaintiff's safety or health. Plaintiff also cannot show a deliberate indifference to his medical needs. Plaintiff himself chronicles at least 18 times he has been treated by medical personnel over the course of a few months. Further, plaintiff has not exhausted or tried to exhaust his available administrative remedies that have been endorsed by Kansas federal courts. Finally, plaintiff cannot show that he has had constitutionally inadequate contact with his counsel and his family.

I.       **There Is No Evidence That Defendant Tommy Williams Actually Knew Of and Disregarded a Substantial Risk of Harm to Plaintiff's Health.**

Plaintiff must prove that defendant Warden Tommy Williams actually knew of and disregarded a substantial risk of harm to plaintiff's health or safety. To state a claim in federal court, "a complaint must explain what each defendant did" to the plaintiff; "when the defendant did it; how the defendant's action harmed [the plaintiff]; and what specific legal right the plaintiff believes the defendant violated." *May v. Bunting*, No. 22-3198-JWL-JPO, 2022 WL 4182315, at *1 (D. Kan. Sept. 13, 2022) (quoting *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). "An essential element of a civil rights claim against an individual is that person's direct personal participation in the acts or inactions upon which the complaint is based." *Harry v. Hudson*, No. 22-3186-JWL-JPO, 2022 WL 4245477, at *4 (D. Kan. Sept. 15, 2022); *Erwin v. Zmuda*, No. 22-3170-JWL-JPO, 2022 WL 16854278, at *5 (D. Kan. Nov. 10, 2022). "As a result, a plaintiff is required to name each defendant not only in the caption of the Complaint, but again in the body of the Complaint and to include in the body a description of the acts taken by each defendant that violated Plaintiff's federal constitutional rights." *Harry*, at 4.

For supervisory liability to attach, the supervisor must have personally participated in the claimed constitutional deprivation. "[T]he defendant's role must be more than one of abstract authority over individuals who actually committed a

constitutional violation." *Sperry v. Corizon Health, Inc.*, No. 18-3119-SAC, 2020 WL 905745, at *2 (D. Kan. Feb. 25, 2020) (quoting *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008).

In the Complaint, there are two references to defendant Tommy Williams. The first reference is in the caption. The second reference is in paragraph 15, stating that Williams is being sued in his official capacity. There are no other references to Williams. On the other hand, "KDOC" is referenced 24 times in the Complaint regarding alleged actions, inactions, or knowledge. In the Memorandum in Support of Complaint, Williams is not mentioned even once. Conversely, KDOC's alleged actions, inactions, or knowledge are referenced 58 times – and that's only in the pages prior to the "Arguments and Authorities" section.

Because the defendants do not bear the ultimate burden of persuasion, they do not have to negate the plaintiff's claim. Rather, defendants may meet their burden by "pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Adams v. Am. Guarantee & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000). Plaintiff has presented no evidence that Williams was aware that plaintiff faced a substantial risk of serious harm, that he personally saw plaintiff at any time, or that he had any personal involvement whatsoever with plaintiff's incarceration. For that matter, plaintiff has not presented any evidence that any specific person

personally saw plaintiff or had any involvement in plaintiff's medical treatment. Therefore, plaintiff's claims fail as a matter of law.

## II.  Plaintiff Cannot Show a Deliberate Indifference to His Medical Needs.

While he may disagree with his course of treatment, plaintiff's Complaint and Memorandum in support thereof reference numerous instances of medical treatment that plaintiff *has* received while incarcerated.  In fact, plaintiff's Memorandum references 18 separate occasions of medical treatment plaintiff received between February 9, 2022, and December 23, 2022 (Doc. Nos. 18-7 to 18-24).  That's in addition to the course of treatment outlined in Dr. Paige Dodson's affidavit (Doc. No. 13-2).

"Failure to provide adequate medical care is a violation of the Eighth Amendment if it is a result of deliberate indifference to a prisoner's serious medical needs." *Garcia v. Salt Lake Cty.*, 768 F.2d 303, 307 (10th Cir. 1985) (citation omitted). "'Deliberate indifference' involves both an objective and a subjective component.  The objective component is met if the deprivation is 'sufficiently serious.'"  *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000).

As to the subjective component, a plaintiff must prove that a prison official "knows of and disregards an excessive risk to inmate health or safety." *Id.* (citation omitted).  "Whether a particular form of medical treatment is indicated 'is a classic example of a matter for medical judgment,' and a physician's exercise of such judgment is insufficient to sustain a claim under the Eighth Amendment."  *Green v. Lawhorn*, No.

09-3055-SAC, 2012 WL 786331, at *16 (D. Kan. Mar. 8, 2012) (citing, *inter alia, Estelle v.*

*Gamble,* 429 U.S. 97, 107 (1976)).  See also *Franklin v. Kansas Dep't of Corr.,* 160 F. App'x

730, 735 (10th Cir. 2005) (court cited to plaintiff's own recitation of his "numerous

doctor visits and various treatments" in holding no deliberate indifference).

> Where the complaint alleges a "series of sick calls, examinations, diagnoses, and medication," it "cannot be said there was a 'deliberate indifference' to the prisoner's complaints." *Smart v. Villar,* 547 F.2d 112, 114 (10th Cir. 1976). … The prisoner's right is to medical care – not to the type or scope of medical care he personally desires. A difference of opinion between a physician and a patient or even between two medical providers does not give rise to a constitutional right or sustain a claim under § 1983.

*Harry v. Hudson*, No. 22-3186-JWL-JPO, 2022 WL 4245477, at *3 (D. Kan. Sept. 15, 2022).

Dr. Dodson provided a detailed account of plaintiff's medical care by Centurion

and Wesley Medical Center.  For example, Dr. Dodson explained why the addition of

delivery of nutrients via Total Parenteral Nutrition ("TPN") is not medically indicated.

(Doc. No. 13-2, ¶¶ 17-18)  (*Compare with*, "Counsel for Plaintiffs have requested and

demanded that KDOC utilize existing lines into Mr. Calvin to insert a TPN and provide

Mr. Calvin with needed nourishment."  (Doc. No. 1, p. 3, fn. 3))  Curiously, plaintiff has

not offered any substantive evidence regarding TPN treatment.  There is not even a

mention of TPN treatment in Dr. Richard Sosinski's affidavit offered by plaintiff.  (See

Doc. No. 18-2)

A difference of opinion between Dr. Dodson and plaintiff, or even between Dr. Dodson and Dr. Sosinski, does not sustain a deliberate indifference claim. Plaintiff's claim of deliberate indifference fails as a matter of law.

III.   **Plaintiff has failed to exhaust administrative remedies.**

As shown in its Response to plaintiff's request for relief, the State has shown that plaintiff has failed to exhaust his administrative remedies. The Prison Litigation Reform Act ("PLRA") requires any prisoner bringing suit under federal law to exhaust all available administrative remedies before seeking relief in federal court. 42 U.S.C. 1997e(a). The exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences." *Porter v. Nussle*, 534 U.S. 516, 520 (2002). "All 'available' remedies must now be exhausted." *Id.* at 524. The exhaustion requirement is also a total exhaustion requirement, and it applies to "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Horton v. Ortiz*, 138 Fed. Appx. 104, 106 (10th Cir. 2005).

Although a defendant carries the burden of showing that the plaintiff failed to exhaust his administrative remedies, "once the defendant has carried that burden, 'the onus falls on the plaintiff to show that remedies were unavailable to him.'" *May v. Segovia*, 929 F.3d 1223, 1234 (10th Cir. 2019) (quoting *Tuckel v. Grover*, 660 F.3d 1249, 1254

(10th Cir. 2011)). Plaintiff cannot meet his burden here. Indeed, plaintiff concedes he made no attempt to comply with KDOC's grievance procedure.

In *Perry v. Parks*, No. 19-3266-JWL-JPO, 2022 WL 14807175 (D. Kan. Oct. 26, 2022), the plaintiff claimed that KDOC's contracted medical provider failed to supply him with proper medication. This Court held that the exhaustion requirement "applies to all inmate suits about prison life," and it is "mandatory, and the district court [is] not authorized to dispense with it." (Citations omitted) In *Perry*, this Court found that the plaintiff started but did not finish the grievance process set forth in K.A.R. 44–15–101. Therefore, this Court held that the plaintiff failed to meet the exhaustion requirement, and dismissed the action.

To meet the PLRA's exhaustion requirement, plaintiff was required to '"use[ ] all steps that the agency holds out' in 'compliance with an agency's deadlines and other critical procedural rules."' *Gray v. Sorrels*, No. 19-7060, 2020 WL 3120997, at *1 (10th Cir. June 12, 2020) (quoting *Woodford*, 548 U.S. at 90 (internal quotation marks and citation omitted)). The doctrine of substantial compliance does not apply. *Jernigan*, 304 F.3d at 1032. Simply put, plaintiff failed to meet the mark as he could not circumvent the grievance process by choosing instead to have his attorneys send emails to KDOC staff. "Giving notice of his claims by means other than the prison's available grievance process does not satisfy the PLRA's exhaustion requirement." *Gonzales-Liranza v. Naranjo*, 76 F. App'x 270, 273 (10th Cir. 2003) (citing *Jernigan*, 304 F.3d at 1032; *see also*

*Jackson v. Klevenhagen,* 54 F. App'x. 591 (5th Cir. 2002) (court rejected prisoner's argument that he "substantially complied" with the exhaustion requirement by complaining directly to prison officials both orally and in writing; court held that there is no such "substantial compliance" exception to the requirements of § 1997(e));

*Shephard v. Wilkinson,* 27 F. App'x. 526, 527 (6th Cir. 2001) ("While [plaintiff] asserts that he has raised his complaints in numerous letters to prison and public officials, a prisoner must utilize the formal grievance process provided by the state; he cannot comply with the requirements of § 1997e(a) by informally presenting his claims.");

*Armstrong v. Scribner,* No. 06-852-RBB, 2008 WL 268974 at *9 (S.D. Cal. Jan. 30, 2008) (finding that plaintiff's letter to prison official, in lieu of filing grievance on standardized form, was insufficient to satisfy exhaustion requirement, court stated that "[s]ince the PLRA, substantial compliance with exhaustion rules is no longer sufficient. A prisoner must *properly* exhaust all claims administratively before filing suit in federal court.") (citing *Woodford,* 548 U.S. at 90–91) (emphasis in original)).

    In the case at bar, plaintiff has not followed the State's grievance process regarding his medical care, access to counsel, or familial association.  Although plaintiff argues that his "precarious condition" has prevented him from completing a grievance form, plaintiff is lucid and able to contact medical staff, who are available 24/7, at any time.  In fact, plaintiff was able to complete two legal forms while in the infirmary.  On December 23, 2022, plaintiff completed and signed an "Emergency Information Form"

(Exhibit F, attached) and a "Disposition of Deceased Resident Body Form" (Exhibit G, attached).  Both forms were provided by a representative of KDOC.  If plaintiff was able to complete and sign those two legal forms, certainly plaintiff could comply with the grievance process.

Plaintiff cites 42 U.S.C. 1997e(e) in claiming the administrative exhaustion requirement does not apply to plaintiff's claim for injunctive relief.  However, 42 U.S.C. 1997e(e) states: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, *for mental or emotional injury* suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18)."  (Emphasis added)  Here, by his own admission, plaintiff is not bringing an action for "mental or emotional injury."  Plaintiff is asking for injunctive relief.  42 U.S.C. 1997e(e) simply does not apply here.

Plaintiff also cites *Jackson v. Dist. of Columbia*, 254 F.3d 262 (D.C. Cir. 2001) for the proposition that section 1997e(a) "does not affect declaratory or injunctive relief to maintain the status quo."  (Doc. No. 18, p. 34)  However, plaintiff is not claiming to "maintain the status quo" – plaintiff's fundamental claims for relief are to alter the status quo and ask for additional State action.  Further, *Jackson* ultimately held that the exhaustion requirement did in fact apply to the plaintiff's claims.  Therefore, *Jackson* only buttresses the State's exhaustion argument.

Plaintiff cannot exhaust his administrative remedies simply by having his counsel send emails to KDOC representatives.  There is a proper procedure that has been endorsed by the Tenth Circuit and Kansas district courts.  Therefore, plaintiff has not exhausted his administrative remedies, and plaintiff's claims must be dismissed.

IV.   **Plaintiff Has Had Adequate Access to Counsel and his Family.**

As shown in its Response to plaintiff's request for relief, the State has shown that plaintiff has had numerous contacts with his counsel and family.  While an inmate has the right "to communicate with others beyond the prison walls," courts are required to balance such right with the concerns of prison administrators.  *Williams v. Zmuda*, No. 20-3277-JWB, 2022 WL 683343, at *5 (D. Kan. Mar. 8, 2022), *reconsideration denied*, No. 20-3277-JWB, 2022 WL 1471373 (D. Kan. May 10, 2022).  Further, inmates are not entitled to the most technological means of communication or even their preferred mode of communication.  See *Washington v. Reno*, 35 F.3d 1093, 1100 (6th Cir.1994) (stating that inmates do not have a right to unlimited telephone use); *Bristow v. Amber*, No. 2:12-cv-412, 2012 WL 1758570, at *2 (S.D. Ohio May 16, 2012), *report and recommendation adopted*, 2012 WL 1963577 (S.D. Ohio May 31, 2012) (collecting cases in which courts rejected the argument that the First Amendment requires prison officials to provide inmates with access to e-mail communication); *Holloway v. Magness*, No. 5:07CV00088 JLH-BD, 2011 WL 204891, at *7 (E.D. Ark. Jan.21, 2011), *aff'd*, 666 F.3d 1076 (8th Cir. 2012), *cert. denied*, 133 S. Ct. 130 (holding that the First Amendment does not require

"that the government provide telephones, videoconferencing, email, or any of the other marvelous forms of technology that allow instantaneous communication across geographical distances; the First Amendment is a limit on the exercise of governmental power, not a source of positive obligation on the part of government.").

While plaintiff quibbles about alleged instances when attorney-client phone calls were not accomplished at the exact time demanded, no effort has been made to communicate by other confidential means available to him, including confidential in-person visits and legal mail. "A prisoner cannot demonstrate an injury on the basis of denial of attorney phone calls when the prison provides alternative methods of contacting a lawyer." *Lobato v. Gonzales*, No. 14-753 WJ/GBW, 2015 U.S. Dist. LEXIS 196635, at *19 (D.N.M. Dec. 16, 2015) (citing *Elrod v. Swanson*, 478 F. Supp. 2d 1253, 1278 (D. Kan. 2007) (holding that the denial of attorney calls to a prisoner did not cause him to suffer an injury "when there is no evidence showing that the plaintiff could not have contacted his attorney through other methods").

Plaintiff has been given abundant and reasonable access to counsel and his family. (See Doc. 13-3)  As shown above (Exhibits F and G), plaintiff has also been given access to legal forms.  In fact, the email exchange attached as "Exhibit H" between plaintiff's ex-wife, Samantha McCowan, and Kirbie Shearburn at KDOC demonstrates the access to family and grandchildren that has been provided to plaintiff.  As shown by Exhibit H, while there was some difficulty, Ms. Shearburn was able to arrange a

videoconference between plaintiff and his grandchildren.  Contrary to his claims,

plaintiff has had numerous and meaningful contact with his family and counsel.

## V.   <u>Conclusion.</u>

As Judge Crow noted in denying a prisoner's request, the federal courts should

avoid granting injunctions which "unnecessarily interfere with prison management for

no substantial good reason." *Deville v. Melgren,* No. 08-3076-SAC, 2008 WL 1924932, * 1

(D. Kan. Apr. 29, 2008) (citing *Turner v. Safely,* 382 U.S. 78, 84-85 (1987).  In *Turner,* the

Court recognized that while prisoners enjoy constitutional rights:

> courts are ill equipped to deal with the increasingly urgent problems of
> prison administration and reform.  Running a prison is an inordinately
> difficult undertaking that requires expertise, planning, and the
> commitment of resources, all of which are peculiarly within the province of
> the legislative and executive branches of government. Prison
> administration is, moreover, a task that has been committed to the
> responsibility of those branches, and separation of powers concerns
> counsel a policy of judicial restraint. Where a state penal system is involved,
> federal courts have… additional reason to accord deference to the
> appropriate prison authorities.

*Id.*

Here, plaintiff has not shown the aforementioned required elements in making his

various claims.  For all the foregoing reasons and those stated in the State's Response to

Complaint (Doc. No. 13), the defendants are entitled to judgment as a matter of law.

Respectfully submitted,

OFFICE OF ATTORNEY GENERAL
KRIS W. KOBACH

s/Shon D. Qualseth
Shon D. Qualseth, KS Sup. Ct. No. 18369
Assistant Attorney General/Senior Trial Counsel
Memorial Bldg., 2nd Floor
120 SW 10th Avenue
Topeka, Kansas 66612-1597
Tel:  (785) 368-8424
Fax:  (785) 291-3767
Email:  shon.qualseth@ag.ks.gov
*Attorney for Defendants State of Kansas and Warden*
*Tommy Williams*

## CERTIFICATE OF SERVICE

I certify that on this 13th day of January, 2023, I electronically filed this Response to Plaintiff's Memorandum in Support of Complaint using the CM/ECF system, which will send electronic notification of such filing to all counsel of record.

s/Shon D. Qualseth
Shon D. Qualseth

- 13 -