## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JOHN KEITH CALVIN, | ) |
|     Plaintiff, | ) ) ) |
| v. | ) Case No. 5:22-cv-03317-JWL-JPO |
| STATE OF KANSAS, et al. | ) ) ) |
|     Defendants. | ) ) |

### REPLY TO MEMORANDUM IN SUPPORT OF COMPLAINT

The omissions in KDOC's Response (Doc. 22) expose the failings of KDOC's arguments. First, KDOC completely failed to address Dr. Sosinski's affidavit regarding Calvin's malnutrition and inadequate pain management. Second, KDOC abandoned its legally erroneous claim that Centurion is a necessary party. Third, KDOC failed to contest Calvin's authority for a second deposition, preserving his testimony regarding treatment and medical records that KDOC withheld (despite being specifically requested before the first deposition on December 22, 2022). On January 13, 2023, KDOC produced some, *but not all*, of the previously withheld medical records. What KDOC has produced further supports Calvin's claims.

For example, on December 15, 2022, Wesley Medical Center documented the standoff over Calvin's transportation back to the prison, as described in Calvin's Memorandum. (Doc. 18 at p. 2.) After learning KDOC intended to force Calvin to lay in the back of a van for transport to the prison, Wesley took the highly unusual step of canceling Calvin's planned and scheduled discharge.[1] KDOC then began repeatedly calling Wesley, demanding Calvin's discharge.[2]

---

[1] December 15, 2022 Patient Care Note, attached as <u>Exhibit 31</u> (produced by KDOC on January 13, 2023).
[2] This appears to document the "threats made to outside medical providers" that "threatened the future viability of continued health care with those providers" KDOC referenced. (DOC 13 at pp. 12-13, ¶ 39.) Troublingly, KDOC states this conduct was committed by "Mr. Calvin's family and/or agents" and does not disclose that the conduct was actually committed by KDOC itself.

1

Describing KDOC's planned treatment of Calvin as "inhumane," Wesley refused to discharge Calvin until KDOC reluctantly withdrew its refusal to provide a medically necessary ambulance:

> Tammy Smith, the director of Nursing in administration at KDOC, called me to ask again, why the patient in 914, Calvin John, was not being discharged. I explained as the nurse Jacklyn Betteridge did, that the doctor wasnt aware that the patient was going to be put into a basic w/c, when he hasnt been up in many days, is currently on a dilaudid pca pump and still in pain, couldnt have left anyway, they were quite upset because the guards are having to be paid to watch him. Pt has been told there is nothing they can do for him, he is going back to be on hospice, but needs a gurney transport at least. Dr. Feldkamp made this decision to cancel his discharge tonight, I called the case manager in ER and had to leave a messege, also informed Shannon, interim manager, and Jennie, manager of 9T that this pt wasnt being transported or discharged due to his pain and terminal condition. Pt needs a gurney transport like anyone else, he has not been able to even eat or drink in days. He grunts in pain with each breath. Emptied his nephrostomy tubes, no longer has a foley, 400 total output. Then, Tammy Smith RN of EDOC called again to get some confirmation that pt would leave tomorrow. I again told her that its up to the doctor, and I was aware of the hospice program at the prison, the issue was the inhumane ride back to the prison. Her number is 785-506-7113.

Once Calvin returned to prison – *where Wesley providers doubted that KDOC had the capacity to care for Calvin* – KDOC's medical records document an inability to properly nourish Calvin:

> "This pleasant 56y/o Afro-American with recurrent rectal CA with distant and numerous metastatic tumors returns from Wesley Med Center last evening around 4 PM. (I saw him last night but was unable to document due to our unreliable NextGen EMR.) He had gone out to Wesley over the Christmas holiday weekend after a nephrostomy tube came out. He was sent to Wesley to have this replaced; he ended up with bilateral double-J tubes and a Foley. His tumor has invaded the prostate and bladder, thus causing bladder outlet obstruction. Other metastatic site include the liver, abdominal cavity, and small bowel. He was on IV Dilaudid and PO oxycodone while hospitalized. He is given PO Dilaudid, which he says seems to help out quite a bit with his pain so long as he gets is [sic] consistently. He denies N/V and says he is having BM's. He cannot tolerate the Aramark diet (not surprising; neither can most healthy inmates), but has some canteen available such as oatmeal. He is also tolerating Ensure. He tells me he is craving sausage; I'm not sure if we have this or not."[3]

And this note is not an outlier. Calvin's KDOC physician again recognized that KDOC is either unwilling or unable to provide constitutionally required nourishment:

> "He says his appetite is down. He tries to eat what Aramark serves, but this would be difficult for a healthy person. He drinks his Ensures. He feels full even with smaller bites. He tells me he is thirsty; he can drink smaller, more frequent amounts."[4]

---

[3] December 29, 2023 Skilled Care Note, attached as Exhibit 32 at p. 2 (produced by KDOC on 1/13/2023).
[4] January 9, 2023 Skilled Care Note, attached as Exhibit 33 at p. 1 (produced by KDOC on 1/13/2023).

If the Eighth Amendment means anything, it means the State cannot starve a prisoner to death or fail to provide adequate pain medicine. Yet that is precisely what KDOC is doing. The Constitution requires more.

## ARGUMENTS AND AUTHORITIES

### I.  Calvin's Statement of Additional Facts Should be Deemed Admitted

Although the parties did not style their filings as a "motion for summary judgment," the Court acknowledged during its January 11, 2023 phone conference that the emergency injunctive relief sought, without a claim for damages, means the Court will issue a final adjudication on the merits. Similarly, the parties have presented the Court with materials outside of the pleadings, rendering the motion "one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). The parties' briefing style and nomenclature acknowledge their agreement.

Despite this, KDOC failed to respond to Calvin's Statement of Additional Facts. D. Kan. Rule 56.1(c). Material facts not specifically controverted are deemed admitted for the purpose of summary judgment. *Id.* at (a) (as to moving party); (b)(2) (as to nonmoving party). As a result, Calvin's Statement of Additional Facts (Doc. 18 at pp. 21-28, ¶¶ 1-27) should be deemed admitted.

### II.  Warden Tommy Williams' Knowledge is Legally Irrelevant

KDOC's first argument – *raised for the first time in the Response* – incorrectly claims that the entire lawsuit must be dismissed because there is no evidence that Warden Williams actually knew that Calvin was being starved to death or lacked adequate pain management in Warden Williams' prison. KDOC even laments that the Complaint only states "that Williams is being sued in his official capacity." (Doc. 22 at p. 2-4.) The distinction between personal- and official-capacity

action suits "apparently continues to confuse lawyers…." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).

"[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 690, n. 55 (1978). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is *not* a suit against the official personally, for the real party in interest is the entity." *Kentucky*, 473 U.S. at 166 (citations omitted) (emphasis in original); *Brandon v. Holt*, 469 U.S. 464, 471 (1985) (holding "judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents").

Here, Warden Williams is sued – as KDOC acknowledges – "in his official capacity." (Doc. 1 at ¶ 15.) Thus, the suit seeks to impose liability on KDOC and effectively obtain injunctive relief against the entity; it does not seek money damages against Warden Williams individually. As a result, Warden Williams' knowledge of Calvin's treatment is legally irrelevant.

### III.     Calvin has Shown Deliberate Indifference to his Medical Needs

Dr. Sosinski's affidavit is damning. His authoritative testimony, anchored in thorough and explicit factual analysis, demonstrates the foundation for his conclusion that KDOC's treatment of Calvin "evidences indifference to his medical needs and will unnecessarily hasten a very painful death." (Doc. 18-2 at ¶ 11.) But KDOC does not respond to Dr. Sosinski's opinions at all. Instead, the most KDOC musters is pointing out that Dr. Sosinski does not opine on a TPN line; a claim for specific medical care made in the Complaint, which Calvin's lawyers were forced by KDOC's conduct to draft and file on an emergent basis. (*Compare* Doc 18-2 at ¶ 11 *with* Doc 22 at p. 5.) The TPN issue is a strawman, which after more thorough consultation with Dr. Sosinski, has now

4

been abandoned as it is not the optimal means for Calvin's diseased digestive system to take in nourishment.

Beyond caviling about a TPN line, where is KDOC's response to Dr. Sosinski's opinions about inadequate nourishment and inadequate pain management or the on-the-ground observations of Calvin's attorneys-in-fact, Kiardra Calvin and Jalisa Bluford? (Doc 18-2 at ¶ 9.b; 18-3 at ¶ 24; 18-4 at ¶¶ 11, 22-23 [inadequate nourishment]; Doc 18-2 at ¶ 9.a; 18-3 at ¶¶ 21-23; 18-4 at ¶¶ 10, 22, 24 [inadequate pain management].) KDOC's response is stunningly silent.[5]

Both objectively and subjectively, Calvin has shown deliberate indifference to his medical needs. Rather than try to present evidence to the contrary, KDOC skirts the issues altogether and avoids the facts in the record. Calvin has presented overwhelming evidence that he is starving to death, which is only buttressed by the most recently received medical records. KDOC offers no defense to this fact. Similarly, Calvin has presented overwhelming evidence that he is suffering unconstitutional amounts of pain, pain which could be readily controlled by a facility equipped to and knowledgeable in handling complex palliative care. KDOC offers no defense to this fact either. KDOC cannot even manage to describe a plan – *any plan* – to keep Calvin from starving to death and ameliorate his well-documented severe pain.

Despite KDOC's mischaracterizations to the contrary, this is not simply a difference of medical opinion. Dr. Sosinski offered admissible expert opinion testimony establishing KDOC's deliberate indifference to Calvin's medical needs. KDOC offered nothing in response. KDOC has deprived Calvin "of the minimal civilized measure of life's necessities," *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981), and its state action is "intolerably cruel." *Hutton v. Finney*, 437 U.S. 678,

---

[5] KDOC implies, *for the first time* and *merely in the conclusion*, that Calvin seeks "unnecessary interference with prison management for no substantial good reason." What this means, how Calvin's transfer to a different facility causes it, and, critically, how it usurps the United States Constitution is all omitted. The doomsday pleas *in the conclusion* are nothing more than empty words.

683, n. 7 (1978) (describing prison diet of fewer than 1,000 calories a day as "intolerably cruel"). KDOC's barbaric treatment is unconstitutional in the United States of America.

### IV.     Calvin Exhausted his Administrative Remedies Pursuant to K.A.R. 44-15-201

As previously briefed, Calvin is not required to exhaust his administrative remedies because this is a suit for injunctive relief, not damages. (Doc 18 at pp. 33-35.) But instead of distinguishing KDOC's cited cases and explaining how its legal analysis is flawed, there is an easier path. Like its other abandoned arguments, what KDOC ignores highlights where its defenses fail as a matter of law. Calvin exhausted his administrative remedies through K.A.R. 44-15-201.

Whether in ignorance of its own regulations or showing a willingness to ignore and disregard those regulations, KDOC boldly and summarily proclaims Calvin "cannot exhaust his administrative remedies simply by having his counsel send emails to KDOC representatives." (Doc 22 at p. 10.) That is KDOC's entire analysis regarding K.A.R. 44-15-201. But that is *precisely* when it applies: where "an inmate wants to bring a problem to the attention of a higher authority without going through the grievance procedure." K.A.R. 44-15-201(a). In those circumstances, notification is provided via a letter "to the warden of the facility, the secretary of corrections, or the state pardon attorney." *Id.* Significantly, the regulation gives the recipient of the grievance the authority to determine whether the prisoner can use this bypass procedure:

> "Any department of corrections or facility official who receives a complaint letter may return it to the inmate with instructions to the inmate to make use of and follow the proper grievance procedure if, in the opinion of the official, the matter is appropriate for handling through the grievance procedure."

K.A.R. 44-15-201(b).

"In this case, the Secretary of Corrections did not return the subject grievances to plaintiff[] with instructions to follow the ordinary grievance procedure. Because the Secretary of Corrections accepted and responded to the grievances, then, plaintiff[] properly exhausted their administrative

6

remedies on these claims." *Strope v. Collins*, No. 06-3150-JWL, 2006 WL 3390393, at *3 (D. Kan. Nov. 22, 2006) (holding administrative remedies exhausted through K.A.R. 44-15-201). The repeated letters sent directly to the Secretary of KDOC, Mr. Hrabe (Deputy Secretary of KDOC), attorneys for KDOC, and an Assistant Attorney General constitute exhaustion of Calvin's administrative remedies. (*See* Doc 18 at pp. 27-28, ¶¶ 25-27).

No one – including the very Assistant Attorney General now claiming Calvin failed to exhaust his administrative remedies – invoked KDOC's right under K.A.R. 44-15-201(b) to subject Calvin to the traditional three-step exhaustion procedure. Instead, KDOC's counsel accepted and responded to Calvin's expedited grievance. (Doc 18-30 at p. 1.) These facts align with this Court's prior ruling in *Strope*, and KDOC's acceptance and response satisfies Congress' purpose in enacting § 1997e(a). *Porter v. Nussle*, 534 U.S. 516, 524–25 (2002) (describing Congress' purpose to "improve the quality of prisoner suits" and "afford[] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case," with "an administrative record that clarifies the contours of the controversy"). Calvin has properly exhausted administrative remedies.

V. **KDOC has Hindered, Obstructed, and at Times Completely Prevented Calvin from having Access to His Family and Legal Counsel**

During his first hospitalization, KDOC hid Calvin for *days* from both his family and his counsel and refused privileged phone calls.[6] During his second hospitalization, KDOC actively lied about his location, telling Calvin's attorneys-in-fact that he was *not* at Wesley Medical Center when, in fact, he was. At the same time, KDOC's conduct prevented Calvin from serving as a party

---

[6] Counsel takes specific issue with KDOC describing KDOC's documented refusal to allow Calvin to communicate with his attorneys as mere "quibbles about alleged instances when attorney-client phone calls were not accomplished at the exact time demanded." (Doc 22 at p. 11.) However, we cannot believe the State truly believes Calvin, who is expected to live only a matter of days or weeks, is not entitled to access to counsel on an emergent basis.

7

to the Johnson County, Kansas state court case to preserve his testimony. Pursuant to Calvin's Memorandum, this violates Calvin's constitutional rights. (Doc. 18 at pp. 35-36.) Simultaneously, Calvin's family – hours away from the prison – is restricted on the number of visits per week, and some of those visits have been cancelled by KDOC. Dr. Sosinski's unopposed affidavit describes "the availability and presence of family" to be "absolutely essential" to "the dying patient." (Doc 18-2 at ¶ 9.b.) Indeed, "it is time" for KDOC's promise of daily visits. *Id.*

KDOC does not contest any of these facts. Instead, it ignores them, just like KDOC continues to ignore Calvin's starvation and severe pain. KDOC's only offered defense is that Calvin – a man whose life is measured in days – can access his counsel through the mail, or, alternatively, if his attorneys drive hours to the prison every time they need to counsel him. Meanwhile, KDOC knows, Calvin's attorneys are engaged in active litigation in this Court with expedited briefing schedules, and, of course, represent other clients, too. This is not a serious legal argument.[7]

## CONCLUSION

If the facts in this case offer "no substantial good reason" for a court to intervene – as KDOC claims – then no such facts will ever exist. It is difficult to imagine a more extreme case of Eighth Amendment indifference than exists here, where a prisoner is being knowingly tortured with starvation and severe pain because the prison fails to employ well-established methods of palliative care that would relieve unnecessary suffering.

KDOC's treatment of Calvin has been and continues to be "inhumane," barbaric, "intolerably cruel," indifferent, "repugnant to the conscious of mankind," and, most importantly,

---

[7] Counsel has repeatedly sought assurances that KDOC is treating legal phone calls as confidential and is not recording or monitoring Calvin's conversations with his attorneys. Troublingly, KDOC and its counsel refuse to respond to this inquiry and confirm adherence to the privilege.

unconstitutional. Accordingly, Calvin requests that the Court order the relief requested in the Complaint.

Respectfully submitted,

*/s/ Stephen R. McAllister*
Stephen R. McAllister    KS Bar # 15845
DENTONS
4520 Main Street, Suite 1100
Kansas City, Missouri 64111
Telephone:  (816) 460-2400
Facsimile:   (816) 531-7545
Stephen.McAllister@dentons.com

*/s/ William J. Skepnek*
William J. Skepnek    KS Bar # 10149
THE SKEPNEK LAW FIRM, PA
1 Westwood Road
Lawrence, Kansas 66044
Telephone:  (785) 856-3100
Facsimile:   (785) 856-3099
BSkepnek@SkepnekLaw.com

*/s/ Cheryl A. Pilate*
Cheryl A. Pilate    KS Bar # 14601
MORGAN PILATE, LLC
926 Cherry Street
Kansas City, Missouri 64106
Telephone:  (816) 471-6694
Facsimile:   (816) 472-3516
CPilate@MorganPilate.com

*/s/ Quentin M. Templeton*
Quentin M. Templeton    KS Bar # 26666
FORBES LAW GROUP, LLC
6900 College Blvd., Suite 840
Overland Park, Kansas 66210
Telephone:  (913) 341-8600
Facsimile:   (913) 341-8606
QTempleton@ForbesLawGroup.com

*/s/ Brennan P. Fagan*
Brennan P. Fagan    KS Bar # 20430
FAGAN & EMERT, LLC
730 New Hampshire Street, Suite 210
Lawrence, Kansas 66044
Telephone:  (785) 331-0300
Facsimile:   (785) 331-0303
BFagan@FaganEmert.com

ATTORNEYS FOR MR. CALVIN

**CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of January, 2023, I electronically filed the foregoing using the CM/ECF system, which will send electronic notice of such filing to all counsel of record.

*/s/ Quentin M. Templeton*
Quentin M. Templeton