IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JOHN KEITH CALVIN,                          )
                                            )
                    Plaintiff,              )
                                            )
        v.                                  )        Case No. 22-3317-JWL
                                            )
STATE OF KANSAS, DEPARTMENT                 )
OF CORRECTIONS and                          )
TOMMY WILLIAMS, Warden,                     )
El Dorado Correctional Facility,            )
                                            )
                    Defendants.             )
                                            )
_____)

## **MEMORANDUM AND ORDER**

In this matter, plaintiff John Keith Calvin, a state-court prisoner with terminal cancer, acting through counsel, brings suit against defendants Kansas Department of Corrections (KDOC) and the warden of plaintiff's prison, seeking emergency injunctive relief relating to his medical condition and his access to legal counsel and family. By agreement of the parties, the case has been submitted to the Court for trial upon the written submissions. This Memorandum and Order constitutes the Court's findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52(a) upon this trial to the Court. For the reasons set forth below, the Court concludes that plaintiff is not entitled to the relief requested, and judgment shall be entered in this case in favor of defendants accordingly.

## I.   <u>Background Facts and Procedural History</u>

The following facts are undisputed.  Plaintiff is serving a life sentence as a result of state-court felony convictions for first-degree murder and attempted robbery.[1]  He is presently incarcerated at the El Dorado Correctional Facility (EDCF).  Plaintiff was diagnosed in 2017 with colon cancer, which went into remission after treatment with chemotherapy and radiation.  In September 2022, plaintiff became jaundiced and began to lose weight.  On November 23, 2022, plaintiff was transported to Wesley Medical Center in Wichita.  A procedure performed at Wesley on December 13, 2022, revealed the presence of tumors in plaintiff's abdomen, and bilateral nephrostomy tubes were placed in plaintiff.  Plaintiff was returned to EDCF's infirmary on December 16.  On December 22, 2022, plaintiff was deposed at the prison pursuant to a state-court order obtained by his attorneys.  A second trip to the hospital was required on December 23, 2022, because plaintiff's tubes had become detached.  Plaintiff's present prognosis is poor, his cancer has reached Stage IV, and he is not expected to survive longer than a few months.

Plaintiff filed the present action through counsel on December 30, 2022.  In his complaint, plaintiff asserts claims in two counts:  a claim for deliberate indifference to serious medical needs in violation of the Eighth and Fourteenth Amendments (Count I); and a claim for failure to provide access to courts in violation of the First, Sixth, and Fourteenth Amendments (Count II).  Plaintiff seeks injunctive relief in the form of an order to KDOC to do the following:  "(i) provide [plaintiff] with immediate intravenous

---

[1] Plaintiff claims, without citation to evidence, that he is eligible for parole in April or May 2023.

nourishment; (ii) transfer [plaintiff's] care and treatment to a hospital or hospice facility capable of handling his needs for nutrition and pain management; (iii) immediately and until his death, notify [plaintiff's] attorneys-in-fact and attorneys-at-law of [plaintiff's] location and immediately upon any change in said location; [and] (iv) make [plaintiff] available for an immediate deposition to preserve his testimony."[2]

The Court, on its own initiative, set a deadline for defendants to file a written response to plaintiff's request for emergency relief, and defendants filed such a response, including evidence, on January 4, 2023.  The Court conducted a telephone conference with the parties on January 5, and the Court set a deadline for a reply brief from plaintiff. Plaintiff filed his reply, including evidence, on January 10, 2023.  The Court conducted another telephone conference on January 11, and it ordered the parties to confer concerning further briefing and the manner in which the case should be tried.  The Court noted that although the parties had cited the preliminary injunction standard in their briefs, plaintiff had not filed a separate motion for a preliminary injunction; and it informed the parties that because plaintiff was seeking the entirety of the relief requested in the complaint on an emergency basis, the Court would simply decide the entire matter by expedited trial to the Court.  The following day, counsel for the parties informed the Court of their agreement that each side would submit one additional brief and that the matter would then be tried to the Court solely upon the parties' written submissions.  Defendants then submitted a

---

[2]  Plaintiff also seek payment of his costs, expenses, and attorney fees, although he has not cited any basis for that request.  In light of its decision in favor of defendants, the Court declines to award plaintiff any such relief.

supplemental response brief, including additional evidence, on January 13, 2023; and plaintiff submitted a supplemental reply brief, including additional evidence, on January 16, 2023. The case is thus ripe for the Court's decision by trial upon the parties' written submissions.

## II.   <u>Necessary Party</u>

The Court first addresses defendants' argument that the case should be stayed until Centurion of Kansas, LLC ("Centurion") may be joined as a necessary party under Fed. R. Civ. P. 19(a)(1). KDOC contracts with Centurion to provide medical care for all of its inmates, and Centurion provided medical care to plaintiff at EDCF. The Court declines to stay the case on that basis.

Rule 19(a)(1) provides that a person must be joined as a party if "(A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest . . . ." *See id.* Defendants argue only conclusorily, however, that in Centurion's absence the Court cannot accord complete relief among the existing parties, without explaining why that might be so. Plaintiff argues that the requested injunctive relief may be granted by order to KDOC to provide particular care or to take particular action with respect to plaintiff, and defendants have not responded to that argument or even addressed the issue of joinder in their supplemental brief. The Court

concludes that defendants have failed to show that complete relief cannot be accorded in Centurion's absence, and it therefore rejects this argument based on Rule 19(a)(1)(A).

Defendants also rely on Rule 19(a)(1)(B), arguing conclusorily that disposing of the case without Centurion could impair Centurion's ability to protect its own interest. That part of the rule, however, requires that Centurion have claimed an interest here, and defendants have not disputed plaintiff's assertion that Centurion has not claimed an interest in this case (despite the fact that its director submitted an affidavit in support of defendants). Accordingly, Centurion's joinder is not required by either prong of Rule 19(a)(1), and the Court therefore rejects defendants' request for a stay.

### III.   <u>Exhaustion</u>

The Court next addresses defendants' argument that the case should be dismissed because plaintiff failed to exhaust his administrative remedies before filing his constitutional claims under 42 U.S.C. § 1983, as required by a provision of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a).   The statutory exhaustion requirement "is mandatory, and the district court [is] not authorized to dispense with it." *See Beaudry v. Corrections Corp. of Am.*, 331 F.3d 1164, 1167 n.5 (10th Cir. 2003). Defendants argue that plaintiff was required and failed to comply with a four-step administrative grievance procedure mandated by Kansas regulations. *See* K.A.R. §§ 44-15-101 to -106; *Barnett v. Kansas*, 2016 WL 3618655, at *3 (D. Kan. July 6, 2016).

### A.   <u>*Applicability of the Requirement*</u>

In response to this defense, plaintiff first argues that this requirement does not apply here because he seeks only injunctive relief.  The statute does not make any such distinction regarding the type of relief sought, however, *see* 42 U.S.C. § 1997e(a), and plaintiff has not cited any authority that supports such a general exception.  Two cases cited by plaintiff do not address Section 1997e(a) or the issue of exhaustion, but rather address the physical-injury requirement of Section 1997e(e), which applies to certain damage claims.  *See Perkins v. Kansas Dept. of Corrections*, 165 F.3d 803, 808 (10th Cir. 1999); *McKillip v. Norwood*, 2022 WL 17069582, at *2 (10th Cir. Nov. 17, 2022) (unpub. op.) (citing *Perkins*).[3]  In the only other case cited by plaintiff on this issue, the court noted that "[t]he Supreme Court has long recognized that federal courts possess a 'traditional power to issue injunctions to preserve the *status quo* while administrative proceedings are in process.'"  *See Jackson v. District of Columbia*, 254 F.3d 262, 268 (D.C. Cir. 2001) (quoting *FTC v. Dean Foods Co.*, 384 U.S. 597, 604 (1966)).  As defendants note, however, plaintiff does not merely seek a status quo injunction, but rather requests a mandatory injunction requiring that affirmative steps be taken.  Moreover, the Court is not being asked merely to preserve the status quo while plaintiff completes the administrative grievance procedure.  The case certainly does not provide authority for the proposition that the PLRA exhaustion

---

[3]  Presumably *McKillip* is the case to which plaintiff's counsel was referring in a telephone conference with the Court when he stated that the Tenth Circuit had recently confirmed that the exhaustion requirement of Section 1997e(a) does not apply to claims for injunctive relief.

requirement does not apply to any suit seeking injunctive relief.[4]  Plaintiff has provided no such authority in support of this argument.   The Court therefore concludes that the exhaustion requirement does apply here.

### B.   *Availability of the Administrative Remedy*

Plaintiff next argues that the administrative grievance procedure was not "available" to him.   The PLRA exhaustion requirement does not apply unless the administrative remedy is "available", meaning capable of use to obtain some relief.   *See Ross v. Blake*, 578 U.S. 632, 638, 642 (2016).   The Supreme Court provided three examples of situations in which administrative remedies may not be available:   if the procedure effectively operates as a dead end, with officers unable or consistently unwilling to provide any relief to aggrieved inmates; if the administrative scheme is so opaque that it becomes incapable of use;   and when prison administrators thwart the process through machination, misrepresentation, or intimidation.   *See id.* at 643-44.   "Although a defendant bears the burden of proving that the plaintiff did not exhaust his administrative remedies, once the defendant has carried that burden, the onus falls on the plaintiff to show that remedies were unavailable to him."   *See May v. Segovia*, 929 F.3d 1223, 1234 (10th Cir. 2019) (citations and internal quotations omitted).   Defendants provided evidence, not disputed by plaintiff,

---

[4]  Despite defendants' supplemental brief, in which they pointed out these ways in which the cited cases do not support plaintiff's argument, plaintiff doubled down in his supplemental reply brief, repeating and citing to his prior brief's argument that he "is not required to exhaust his administrative remedies because this is a suit for injunctive relief, not damages."   He did not address defendants' response, however, or cite to additional authority.

that plaintiff failed to raise these issues through the four-step administrative grievance procedure; thus, plaintiff bears the burden to show unavailability here.

The Court finds that plaintiff has not met that burden in this case. In its reply brief, plaintiff argues that KDOC has refused to grant access to his attorneys, and he also points to his weakened, bed-ridden condition. As discussed below, however, plaintiff has had numerous contacts with his attorneys and his family, who could have assisted him with the grievance procedure. Moreover, defendants have submitted evidence, undisputed by plaintiff, that plaintiff has been lucid and able to contact medical staff in the infirmary, and that he has even succeeded in completing two legal forms recently while there, but he nonetheless has not attempted to make use of the grievance procedure. Plaintiff has not responded to these points in his supplemental reply. Accordingly, the Court finds that plaintiff has failed to show that the prison grievance procedure was not available to him.

## C.   *Compliance Through Emails from Counsel*

Finally, plaintiff relies on K.A.R. § 44-15-201, which provides as follows:

(a) If an inmate wants to bring a problem to the attention of a higher authority without going through the grievance procedure, the inmate may address as official mail a sealed letter or grievance report form to the warden of the facility, the secretary of corrections, or the state pardon attorney. However, these letters or grievance report forms should be reserved for the most difficult and complex problems. Generally, any matter that can be internally handled under the inmate grievance procedure shall not be considered as appropriate for the use of the official mail correspondence privilege.

(b) Any department of corrections or facility official who receives a complaint letter may return it to the inmate with instructions to the inmate to make use of and follow the proper grievance procedure if, in the opinion of the official, the matter is appropriate for handling through the grievance procedure.

*See id.*  Plaintiff argues that he may circumvent the usual grievance procedure as permitted by this regulation, based on his having raised these issues in emails sent by his counsel to KDOC's chief legal counsel.  Plaintiff argues that because that recipient did not respond with instructions to follow the usual grievance procedure, as provided in section (b) of the regulation, plaintiff should be deemed to have satisfied the exhaustion requirement in accordance with this regulation.

The Court rejects this argument for exhaustion in this case.  Although the regulation in Section 44-15-201 provides for an alternative means of exhausting administrative remedies, the inmate must comply with the specific requirements of the regulation, as substantial compliance is not sufficient.  *See Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002).  Plaintiff relies on emails sent by his counsel to an attorney for KDOC, but those emails do not satisfy the strictures of the regulation, which requires (1) "a sealed letter or grievance report form" in "official mail" (2) sent to the warden, the secretary of corrections, or the state pardon attorney.  *See* K.A.R. § 44-15-201(a).[5]

Moreover, the KDOC attorney to whom the emails were sent did not accept those emails as a grievance concerning a "difficult and complex" problem such that the usual grievance procedure could be circumvented.  Notably, the emails do not cite Section 44-15-201 or contain any reference to exhaustion or the grievance procedure.  Plaintiff relies on *Strope v. Collins*, 2006 WL 3390393 (D. Kan. Nov. 22, 2006) (Lungstrum, J.), in which this Court allowed for exhaustion under this regulation.  *See id.* at *3.  In that case, however,

---

[5]  Plaintiff has not asserted that the attorney to whom the emails were sent is the state pardon attorney.

the Secretary of Corrections had accepted and responded to the grievances. *See id.* That particular fact was noted by the Tenth Circuit as a basis for distinguishing *Strope* in the more recent case of *Ridley v. KDOC*, 740 F. App'x 639 (10th Cir. 2018) (unpub. op.). *See id.* at 641 (citing *Strope*).  In *Ridley*, the recipient of the inmate's letter, the state pardon attorney, had not responded to the grievance and thus had not taken "the extraordinary step of exercising his discretion to accept the matter as 'difficult and complex' enough to merit" use of the procedure in Section 44-15-201(a). *See id.* at 641-42.  Thus, the Tenth Circuit affirmed the district court's ruling that the inmate had not exhausted his administrative remedies. *See id.* at 642.

In this case, plaintiff has not provided any evidence of correspondence in which KDOC's attorney agreed to accept the grievance in lieu of compliance with the usual procedure or evidence that the attorney responded substantively to the complaints.[6]  Indeed, in its response brief, plaintiff argues that the KDOC attorney's frequent failure to respond to the emails evidences that KDOC's willingness to consider "difficult and complex" problems is illusory, and that KDOC seeks simply to "run out the clock on [plaintiff]."  The facts of this case, then, are much closer to those in *Ridley* than to those in *Strope*. Accordingly, the Court finds that plaintiff did not comply with the alternative exhaustion

---

[6]  The attorney's substantive responses were generally limited to asking plaintiff's attorneys not to contact other staff members; noting that access would be given to counsel, who needed to complete a particular form; stating that plaintiff's location would not be disclosed per policy and that plaintiff had declined certain calls; and noting that plaintiff was not eligible for compassionate release under Kansas law because of his off-grid sentence.

procedure set out in Section 44-15-201(a).  It therefore denies relief based on plaintiff's failure to exhaust his administrative remedies as required.

### IV.    Merits of the Claims

In light of the Court's conclusion concerning exhaustion, it is not compelled to address the merits of plaintiff's claims for relief.  The Court notes, however, that plaintiff also failed to establish a need for any particular emergency injunctive relief to prevent constitutional violations with respect to his medical care or his access to legal counsel or the courts, and therefore it would have found in favor of defendants if plaintiff had satisfied the exhaustion requirement.[7]

### A.    *Medical Claims*

Plaintiff alleges constitutional violations with respect to his medical care. "[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment."  *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation any internal quotation omitted).

"Deliberate indifference" involves both an objective and a subjective component.

The objective component is met if the deprivation is sufficiently serious.  A medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious

---

[7]  Plaintiff has not identified any particular person that he alleges committed constitutional violations.  Even if the actions of all KDOC personnel were considered as a whole, however, the court would not find that plaintiff had established violations as required.

that even a lay person would easily recognize the necessity for a doctor's attention.

The subjective component is met if a prison official knows of and disregards an excessive risk to inmate health or safety.  In measuring a prison official's state of mind, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

See Martinez v. Garden, 430 F.3d 1302, 1304 (10th Cir. 2005) (citations and internal quotations omitted).  A mere difference of opinion between the inmate and prison medical personnel regarding diagnosis or reasonable treatment does not constitute cruel and unusual punishment.  See Estelle, 429 U.S. at 106–07; see also Coppinger v. Townsend, 398 F.2d 392, 394 (10th Cir. 1968) (prisoner's right is to medical care, not to type or scope of medical care he desires, and difference of opinion between a physician and a patient does not give rise to a constitutional right or sustain a claim under § 1983).  Medical malpractice is not sufficient in itself to satisfy the subjective component of the deliberate indifference standard.  See Strain v. Regalado, 977 F.3d 984, 996-97 (10th Cir. 2020).

In addition, any prospective injunctive relief to a prisoner "shall extend no further than necessary to correct the violation of the Federal right," and a court "shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right."  See 18 U.S.C. § 3626(a)(1)(A).

With respect to his medical care, plaintiff seeks relief in the form of an order that he be transferred "to a hospital or hospice facility capable of handling his needs for nutrition

and pain management."[8]  Plaintiff has not established, however, a constitutional violation with respect to either his nourishment or his pain management, such that the requested relief would be appropriate.[9]

In arguing that his nourishment has been insufficient, plaintiff generally relies on his significant weight loss and his dislike of the food that has been made available to him. Defendants have provided evidence, however, that plaintiff is free to eat whatever he likes; that he has been given and is drinking supplemental shakes; and that his digestive tract is working, such that a TPN feeding line (which carries its own risks) is not medically indicated.  The most recent records indicate that plaintiff is in fact eating.  Based on that evidence, the Court would find that plaintiff has not shown that he is being deprived of sufficient nourishment (and he certainly has not shown that he is being tortured through starvation, as he claims in his briefs).  Plaintiff has not provided any expert evidence to the contrary.  Plaintiff's medical expert concedes that nutrition and weight loss are complex in a case of this sort and that plaintiff's weight loss is due to a large extent to his cancer.  He then merely states that it is a reasonable goal to meet nutritional needs, and that it should be determined which foods plaintiff can tolerate (while conceding that plaintiff is receiving supplemental shakes).  The most the expert can offer is an opinion that he is "not

---

[8]  Plaintiff also sought an order requiring defendants to provide him with immediate intravenous nourishment, but he subsequently abandoned that claim for relief.

[9]  The Court rejects plaintiff's argument that his factual statements should be deemed admitted.  As the Court made clear to the parties, it is deciding this matter by trial to the Court, and the parties agreed that the trial would be on their written submissions. Thus, the usual summary judgment procedure does not apply here, and the Court has weighed all evidence submitted by both sides.

convinced" that such foods have been available to plaintiff. The expert does not offer an opinion, however, that plaintiff is in fact failing to receive sufficient nourishment. It is also significant that plaintiff has offered no evidence concerning the amount of food or the number of calories that he has actually been consuming.

Based on that evidence, the Court would find that sufficient nourishment has been provided to plaintiff. Moreover, plaintiff has not offered any evidence that his caregivers knew of and nonetheless disregarded a risk that he was not receiving sufficient nourishment. Accordingly, plaintiff has not shown a deliberate indifference with respect to his receiving sufficient nourishment, and therefore injunctive relief would not be warranted with respect to that specific aspect of his care.

Nor has plaintiff made the required showing with respect to his pain management. Plaintiff complains that he is not receiving enough pain relief, but he has not made any specific claim concerning the particular pain medications and dosages that he believes he should be given. He merely relies on evidence from him and from two family members that he is often in pain. Plaintiff's expert notes in his affidavit that plaintiff has been given various pain medications, including morphine and other opioids, and that his morphine dose has been increased; and he concedes that plaintiff's pain appears to be controlled at times. He further opines that some of the concerns that may have caused doctors to hesitate to increase the dosage could be addressed. He stops short of offering an opinion, however, that plaintiff is not receiving necessary pain medication, or that any particular medication should be administered in any particular dosage. A general concern about plaintiff's pain does not constitute sufficient evidence of a serious deprivation of plaintiff's medical needs.

Defendants, on the other hand, have submitted evidence that pain medications have been prescribed by doctors in certain dosages and have been administered; that his dosages have been increased; that plaintiff has rarely requested additional dosages; and that a balance must be maintained so that plaintiff does not suffer adverse consequences from overmedication.  In addition, one of the latest medical records submitted by plaintiff states that the medications are in fact helping quite a lot with plaintiff's pain.

Based on this evidence, including the lack of medical evidence to support plaintiff's claim, the Court would find that plaintiff has failed to show a deprivation of a serious medical need with respect to plaintiff's pain management.  Nor has plaintiff shown that anyone at KDOC knew of but disregarded a risk of a serious deprivation in this regard. Thus, plaintiff has not established deliberate indifference with respect to his pain management in support of injunctive relief with respect to that aspect of his care.

The Court notes plaintiff's reliance to a great extent on two incidents:  first, KDOC's attempt to transport him from the hospital to the prison in a vehicle that did not allow for a gurney, and the hospital's refusal to discharge plaintiff until appropriate transportation was arranged; and second, the displacement of certain tubes that went unnoticed for several days and which necessitated a return trip to the hospital.  Those incidents, however, are not directly related to his requests for relief concerning his nourishment and his pain management, and thus they are not relevant to whether plaintiff is suffering a serious deprivation with respect to those aspects of his care.  Nor is the Court persuaded that those incidents show satisfaction of the subjective prong of the deliberate-indifference standard. KDOC may or may not have been negligent in those instances, but they do not show that

KDOC knew of and then chose to disregard any issues relating to his pain management and nourishment.

Plaintiff also suggests that the recurrence of his cancer should have been noticed by medical personnel much earlier.  Plaintiff has not established that point by medical evidence, however, as plaintiff's expert concedes that he is not an oncologist and that he therefore offers no opinions concerning plaintiff's cancer treatment.  Moreover, any negligence in that respect would not establish deliberate indifference with respect to that care, and thus it also fails to establish it with respect to the separate issues of plaintiff's nourishment and pain management.

Finally, the Court notes the opinion by plaintiff's expert that the best hospice care for plaintiff would include a holistic approach that includes a lot of family contact. Defendants have submitted evidence that they do provide hospice care in their prisons, however, and plaintiff is not necessarily entitled to receive the best possible care.  Rather, the standard is whether KDOC has been deliberately indifferent to plaintiff's serious medical needs, and plaintiff has failed to make such a showing such that transfer to another facility would be required.

<b>B.</b>    <i><u>Claim of a Lack of Access to Family and Counsel</u></i>

Plaintiff also asserts a claim of a constitutional violation of his right to access to the courts, based on his lack of contacts with his family (including his "attorneys-in-fact") and his legal counsel.  The only relief he requests related to this claim is that defendants be ordered to notify his attorneys-in-fact and legal counsel of his location, including when he is moved to another location (such as a hospital).  He does not seek specific relief related

to his family and legal contacts.  The Court would find, however, that plaintiff has failed to show a constitutional violation in this regard.

Plaintiff complains that his access to legal counsel has been restricted, but he is able to cite only one specific instance in which counsel was denied a telephone call with plaintiff.  Plaintiff also argues that KDOC's attorney failed to respond to counsel's request for daily contacts, but plaintiff has not provided evidence that any other specific request for a telephone call or visit was denied.  Defendants have provided evidence that plaintiff has had numerous calls with legal counsel; that contacts have been permitted when requested, with the exception of the one incident when plaintiff's transport back to the prison from the hospital was believed to be imminent; that plaintiff has occasionally expressed the desire not to receive calls from counsel; that counsel made no requests to visit plaintiff in person; and that no legal mail had been received by plaintiff.  Plaintiff has not disputed that evidence.

Thus, plaintiff has utterly failed to show a violation of his constitutional right to access to the courts.  He has not shown that he has been denied sufficient access to his attorneys, as a denial on one occasion does not equate to a denial of meaningful access in light of the numerous contacts he was been allowed.  Nor has plaintiff identified any particular action that he was prevented from taking because of a denial of access to his attorneys. *See Peterson v. Shanks*, 149 F.3d 1140, 1145 (10th Cir. 1998) (a viable claim of denial of access to courts requires proof of prejudice from defendants' actions).  In arguing for a second deposition, plaintiff states that he was unable to provide a verified petition; but he had multiple contacts with his counsel prior to the filing of this suit,

including at his deposition at the prison, and he has not explained how the denial of a single call with counsel prevented his execution of any document. Notably, plaintiff's evidence does not include any affidavit from his counsel identifying other incidents in which specific requests for contact were denied or explaining any prejudice to plaintiff's interests from any restrictions on access. Plaintiff's evidence utterly fails to establish a violation of a constitutional right with respect to his access to counsel or the courts. Moreover, as noted above, plaintiff seeks no specific relief relating to the amount of access to legal counsel.

Plaintiff does seek relief relating to KDOC's refusal to disclose plaintiff's location when he was taken to the hospital on two occasions. Again, however, plaintiff was afforded contacts with his attorney while he was in the hospital except on a single occasion, and thus he has not shown a prejudicial deprivation of access to counsel and the courts while away from the prison. Moreover, plaintiff has not cited any authority suggesting a specific constitutional right to disclosure of his location to his counsel. Nor has plaintiff shown that he will suffer an irreparable injury if his location is not disclosed to his family or counsel if he is hospitalized again in the future.

Nor has plaintiff shown a constitutional violation with respect to his contact with his attorneys-in-fact or other family members. Plaintiff has not established any prejudicial lack of access to the courts because of a lack of contacts with his family members. The undisputed evidence shows that he has been permitted telephone calls with family members upon request; that he has in fact had numerous telephone contacts and in-person visits; and

that his family has declined opportunities to visit on multiple occasions.[10]   Plaintiff complains that family members are presently allowed to visit him in person only once per week, but plaintiff has not explained how such a restriction constitutes a constitutional violation.  *See Peterson*, 149 F.3d at 1145 (inmates have no right to unfettered visitation). Finally, plaintiff has not shown any violation from a failure to disclose his hospital location to his family, who were still permitted telephone contacts during plaintiff's hospitalization.

## V.      Additional Deposition of Plaintiff

On December 22, 2022, plaintiff was deposed at the request of his counsel pursuant to an order by a state court permitting the deposition under K.S.A. § 60-227, and plaintiff testified in that deposition about both his medical care and his claims of innocence. Plaintiff asserts that KDOC failed to produce certain medical records prior to that deposition and that an additional deposition is therefore required concerning those records and concerning his treatment since the first deposition.  Accordingly, in his final request for injunctive relief, plaintiff requests that defendants be ordered to make plaintiff "available for an immediate deposition to preserve his testimony."  More specifically, plaintiff argues in his reply brief that another deposition should be ordered pursuant to Fed. R. Civ. P. 27(a)(3), which provides for the perpetuation of testimony prior to the filing of an action, in light of the short time that he is expected to survive.

---

[10]   Defendants have also provided evidence that plaintiff's ex-wife recently praised a KDOC staff member for making a great effort to facilitate video contacts with plaintiff's grandchildren.

Preliminarily, the Court notes that neither party requested discovery prior to submission of the case for trial to the Court; thus, there is no basis to order a deposition of plaintiff as discovery in the present action. Moreover, although he seeks emergency relief from this Court, plaintiff has not informed the Court of any efforts by his counsel to seek this relief from the state court that ordered the first deposition; nor has plaintiff explained why such relief would not be available from the state court.

Turning to the request under Rule 27(a)(3), the Court concludes that plaintiff has not fulfilled the rule's requirements for an order allowing for the deposition of plaintiff concerning newly-obtained medical records and his medical care. The rule requires a verified petition by the person who wants to perpetuate testimony prior to the filing of an action, with the petition showing the following: that the petitioner expects to be a party to an action cognizable in federal court that cannot be presently brought; the subject matter of the expected action and the petitioner's interest; the facts that the petitioner wants to establish by the proposed testimony, as well as the expected substance of the testimony; and the persons expected to be adverse parties. *See* Fed. R. Civ. P. 27(a)(1). First, plaintiff has not provided a verified petition as part of this request. Plaintiff alleges in his complaint that KDOC's denial of access to legal counsel prevented him from executing a verified petition as required. As discussed above, however, plaintiff had numerous contacts with his attorneys prior to the filing of this action on December 30, 2022, and neither he nor his attorneys (in an affidavit, for example) have explained why plaintiff could not have executed a verified petition by that date (despite having executed other legal forms by that date while in the infirmary).

Second, plaintiff states that he contemplates an action cognizable under federal law, namely an action pursuant to 42 U.S.C. § 1983, and he argues that must give notice of 120 days before filing a claim under the Kansas Tort Claims Act; but he does not explain why his proposed Section 1983 claim could not be brought now, with deposition discovery then being permitted as a part of that action. Indeed, plaintiff seeks to perpetuate testimony only concerning his medical issues to support a deliberate indifference claim, but that is the very claim at issue in this case – and plaintiff has not explained why a damage claim could not have been included in the present action (along with a request for preliminary injunctive relief, for example). In fact, plaintiff could have sought the requested deposition in this action, but he chose instead to forego discovery.

Third, plaintiff has not stated the expected substance of the requested testimony. In his complaint, plaintiff alleges that he received some records on December 27, after the December 22 deposition; but he did not set forth his expected testimony concerning those records or his most recent care in his December 30 complaint. Nor has plaintiff attempted to comply with the rule in the weeks since the first deposition and the filing of the complaint by providing that information to the Court.[11]

Accordingly, the Court concludes that plaintiff has not satisfied the requirements under Rule 27 for an order allowing a pre-suit deposition to perpetuate testimony. It

---

[11]   The Court also notes that it could not order an "immediate" deposition as requested in the complaint, as Rule 27 requires notice of 21 days to adverse parties in advance of the deposition. *See* Fed. R. Civ. P. 27(a)(2).

therefore denies plaintiff's request for an order compelling defendants to make plaintiff available for a deposition.[12]

### VI.    <u>Conclusion</u>

The Court is not unsympathetic to the plight of plaintiff, whose life is coming to an end, and it encourages the parties to continue to work together to provide for plaintiff's ongoing medical and legal needs.  Nonetheless, the Court cannot grant any particular emergency relief in this case in light of plaintiff's failure to exhaust his administrative remedies and his failure to establish the need for an injunction to prevent constitutional violations.  Accordingly, defendants are entitled to judgment in this matter.

IT IS THEREFORE ORDERED BY THE COURT THAT defendants shall be awarded judgment on plaintiff's claims.

IT IS SO ORDERED.

Dated this 19th day of January, 2023, in Kansas City, Kansas.

　　　　　　　　　　　　　　　　　  /s/  John W. Lungstrum
　　　　　　　　　　　　　　　　　Hon. John W. Lungstrum
　　　　　　　　　　　　　　　　　United States District Judge

---

[12]  Of course, plaintiff remains free to request such relief from the state court.